UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

ERICK V. BROWN #240599,

        Plaintiff,                  Case No. 1:11-cv-512

v.                                      Honorable Janet T. Neff

PEGGY WINTERS-HALL et al.,

        Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff Erick V. Brown presently is incarcerated at the Saginaw Correctional Facility (SCF) in Freeland, Michigan. Plaintiff brings this action against the following employees of the Thumb Correctional Facility (TCF): Corrections Officer Peggy Winters-Hall, Food Service Supervisor Constance Wambold, Corrections Lieutenant John Bernstein, and Assistant Deputy Warden Ora Carter. In addition, Plaintiff's complaint names as defendants Parole Officer Christopher Conachan and Hearings Officer Michael Szappan. The Court has granted Plaintiff leave to proceed *in forma pauperis*.

        Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v.*

*Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

## Background

On the evening of December 24, 2008, Plaintiff was working in the dining room of the Food Service Building at TCF when he noticed that prisoner Cannon was missing from his post. Plaintiff searched the kitchen and then notified Defendants Wambold and Winters-Hall of Cannon's absence. Wambold directed Plaintiff to finish cleaning the dining room, which included moving chairs and tables to their proper positions. While Plaintiff was completing this task, prisoner Cannon entered the dining room through an unsecured window. Sometime thereafter, prison officers found several bed sheets that were tied together on the perimeter wall of the prison near the prison yard adjacent to the dining room. Officials suspected an escape attempt.

On December 25, 2008, Plaintiff received a notice of intent to place him in segregation pending the outcome of a police investigation into the attempted escape. On December 26, 2008, Defendant Carter ordered that Plaintiff be placed in a higher level of security. On December 29, 2008, Plaintiff was transferred to "punitive segregation" at Standish Maximum Correctional Facility.[1] (Compl. ¶ 33, docket #1.) As a result of the transfer, Defendant lost his work assignment, lost eligibility for food service "bonus pay," and could no longer participate in a "Building Trades Program." (Compl. ¶ 35.)

Defendant Winters-Hall was asked to review the security video recording of the dining room from the evening of the incident, and she prepared a report indicating: "At 1907 on the tape, I observed prisoner Cannon #208773 appear to exit the unsecured window. I identified

---

[1] According to the complaint, TCF is a security level II prison and Standish Maximum Correctional Facility was a security level V prison.

prisoner Brown #240599 . . . in the area assisting Cannon." (Compl. ¶ 19; *see* Ex. 1, Winters-Hall Critical Incident Participant Report (Dec. 24, 2008), Page ID#51.)

Defendant Wambold also prepared an incident report in which she stated that *she* (rather than Plaintiff) first noticed that Cannon was missing and asked Plaintiff of his whereabouts. (Compl. ¶ 31; *see* Ex. 1, Wambold Critical Incident Participant Rep. (Dec. 27, 2008), Page ID#47.) Defendant Bernstein also reviewed the video recording and described what he observed in a Major Misconduct Report:

> At about 1907 hours, the video showed prisoner Cannon #208773, a Food Service worker, exiting the dining area through the broken window to the Visiting Room yard. At about 1923 hours, the video showed prisoner Brown #240599 standing up Food Service tables and moving the tables to block C/O Winters['s] view so prisoner Cannon could re-enter the building through the window. At about 1926 hours, the video showed prisoner Cannon re-entered the window and returned to his duties. Prisoner Brown was Ided on the video by C/O Winters.

(Ex. 1, Bernstein Major Misconduct Rep. (Dec. 30, 2008), Page ID#33.)[2]

Defendant Bernstein's report charged Plaintiff with a major misconduct for being an accomplice to escape. A prison official reviewed the misconduct report with Plaintiff on January 2, 2009. Plaintiff requested Wambold and Winters-Hall as witnesses for his misconduct hearing, but the reviewing officer noted that no witnesses were requested. (Compl. ¶ 42; Ex. 1, Major Misconduct Rep., Page ID#33.) The reviewing officer also noted that a questionnaire had been sent to Winters-Hall and Wambold. (*Id.*) Defendant Conachan was assigned to investigate the misconduct charges, and he interviewed Plaintiff at the Standish Maximum Correctional Facility on January 5, 2009. Plaintiff requested a copy of the video recording of the incident from Conachan,

---

[2]Plaintiff asserts that Bernstein's report was used as evidence against him in the misconduct proceedings. (Compl. ¶ 54.)

but Conachan told Plaintiff that he had not yet received a copy of it. On January 5, 2009, Plaintiff received notice that the misconduct charge had been changed to "escape."

On January 7, 2009, the Michigan State Police interviewed Plaintiff and determined that there was not sufficient evidence to criminally prosecute Plaintiff in connection with the escape attempt, in part, because the video recording does not show Plaintiff assisting Cannon at 1907 hours, when Cannon left the dining room. On the same day, Defendant Szappan held a misconduct hearing at the Standish Maximum Correctional Facility. Winters-Hall and Wambold were not present at the hearing, but they responded to Plaintiff's questionnaire. (Compl. ¶¶ 27, 49.) At the hearing, Plaintiff requested an opportunity to review the video evidence, but Szappan denied Plaintiff's request. Szappan found Plaintiff guilty of "accomplice to escape," giving the following reasons:

> The misconduct report is detailed, makes sense, is supported by video taped evidence and is found credible and convincing. Prisoner testimony regarding his knowledge about the attempted escape is not consistent and not credible. Hearings Officer finds prisoner was in food service during a time prisoner Cannon attempted to escape from the facility. It is found during the course of prisoner[']s escape, still unknown to facility staff[,] prisoner Brown became aware of the escape att[]empt [as] evidenced by him walking over to the window prisoner left food ser[]vice [from,] bending over, then walking away [from ]the window. Prisoner Brown then moved tables blocking the view of the officer so prisoner Can[n]on could re-enter the chowhall after attempting to escape via the visit[i]ng room yard. Prisoner when blocking the view of staff so prisoner Cannon could re-enter the chow hall concealed the attempted escape violation by assi[s]ting Cannon in retur[n]ing to the food service building undetected by staff. Prisoner concealed this violaiton [sic] [from] authorities, the charge is reduced to accomplice to escape and sustained.

(Ex. 1, Major Misconduct Hr'g Rep. (Jan. 7, 2009), Page ID#32.) As a result of the guilty finding, Plaintiff received thirty days of punitive detention, he forfeited disciplinary credits, he was assigned

- 4 -

to confinement at level V security for five years, and MDOC director Patricia Caruso suspended Plaintiff's visiting privileges indefinitely.

Plaintiff appealed the misconduct decision to the Circuit Court for Ingham County. On July 19, 2009, Plaintiff was transferred to the Alger Maximum Correctional Facility as a result of the closure of the Standish facility. On August 3, 2009, the MDOC Records Custodian notified the circuit court that the MDOC was withholding the video recording from the court record pursuant to Mich. Comp. Laws § 791.252(h), because Szappan determined that release of the video would jeopardize the safety and security of the facility. (Compl. ¶ 69; Ex. 1, Certification of Agency Record, Page ID#31.) The circuit court stayed the case and remanded the matter for a rehearing because there was no indication in the record that Szappan had personally reviewed the video evidence and the video evidence was not part of the agency record.

On September 29, 2009, Plaintiff was transferred to SCF. On October 15, 2009, Szappan conducted a rehearing at SCF. At the rehearing, Plaintiff offered additional evidence, including his own written testimony as well as his itinerary for the date of the incident. The hearing report notes:

> Prisoner present. Prisoner states he is not guilty of the charge. He states he did not see the guy come through the window[,] the window was [intact] prior to this. He reported Cannon was missing about 15 minutes after he discovered he was not on his assignment. . . . Prisoner states he observed Brown [sic] come through the window, he did not know the man was attempting to escape, he thought he may be out there with a lover, hiding something he did not know what he was doing. Prisoner submits itinerary shows prisoner had a call out for Gym from 1946 until 2020. Prisoner added a 8 page testimony letter. Video tape was watched in its entirety by Hearings Officer and discussed with prisoner.[] Video shows prisoner Brown go over to the window area and pick up a table, leav[ing] the mop behind. Prisoner Cannon 208773 comes into the chow hall at this time and starts mopping the floor.   The purpose of this hearing is

> specific to address the video taped footage. The hearing is limited to this evidence. Prisoner had nothing further when asked.

(Ex. 3, Major Misconduct Hr'g Rep., docket #1-4, Page ID#66.) Szappan upheld the original finding of misconduct, noting:

> The misconduct report is detailed [and] makes sense [and] is supported by video tape evidence, which is from a security camera and to be held as confidential, and is found credible and convincing.

(*Id.*)

After the rehearing, the Ingham County Circuit Court denied Plaintiff's appeal, finding that Plaintiff's misconduct conviction was supported by "competent, material and substantial evidence on the whole record," and that the proceedings complied with Michigan law and afforded Plaintiff the process that he was due under the Constitution. *See Brown v. Mich. Dep't of Corr.*, No. 09-877-AA, slip op. at 5, 9 (Dec. 17, 2009). Plaintiff appealed this decision to the Michigan Court of Appeals and the Michigan Supreme Court. His appeals were denied by those courts.

In the instant action, Plaintiff seeks the following relief: reversal of the finding of guilt on the misconduct charge, expungement of the record of misconduct from Plaintiff's institutional files, restoration of the forfeited disciplinary credits, transfer back to TCF in the same position and work assignment that he held prior to transfer out of TCF, and compensatory and punitive damages.

**Discussion**

Though this case was filed in the Western District of Michigan, it appears that the only party who currently resides in the Western District of Michigan is Defendant Szappan. Because Plaintiff fails to state a meritorious claim against Szappan, however, *see* Section I, *infra*, the Court will dismiss the claims against Szappan, and will transfer the remainder of this action to the Eastern District of Michigan*, see* Section II, *infra*.

    I.    Failure to state a claim

A complaint may be dismissed in whole or part for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendant Szappan violated Plaintiff's Fourteenth Amendment right to due process by: (1) withholding from Plaintiff videotape evidence of the escape; (2) failing to review the videotape evidence before finding Plaintiff guilty of the misconduct; (3) improperly withholding the videotape evidence from the Ingham County Circuit Court; (4) limiting the rehearing to the videotape evidence without taking into account new evidence offered by Plaintiff;

and (5) depriving Plaintiff of an impartial decision by presiding over both the original hearing and the rehearing.

In sum, Plaintiff sues Szappan because of his involvement in the misconduct proceedings. Generally, a prisoner's ability to challenge the validity of a prison misconduct proceeding under the Fourteenth Amendment depends on whether the misconduct conviction implicated any liberty interest. Plaintiff alleges that, as a result of the misconduct conviction, he forfeited disciplinary credits, he was transferred to another prison and placed in punitive segregation, and he lost visitation rights. It is unnecessary for the Court to determine whether any of the foregoing deprivations implicated a liberty interest because it is clear that Plaintiff received all of the process to which he was due for the misconduct conviction.

The starting point for any discussion of the procedural due process rights of a prisoner subject to a disciplinary proceeding is *Wolff v. McDonnell,* 418 U.S. 539 (1974). In *Wolff,* the Supreme Court held that prison disciplinary proceedings implicating a liberty interest must provide the following minimum process: (i) at least 24 hours of advance notice of the charges, (ii) the right to call witnesses and to present evidence in the inmate's defense, (iii) an impartial tribunal, and (iv) a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-69.

If the prisoner received the procedural protections set forth in *Wolff*, and if there was "some evidence" to support the decision of the hearings officer, then the prisoner received all the process to which he was due. *Walpole v. Hill*, 472 U.S. 445, 457 (1985). Examining the facts alleged by Plaintiff in the body of the complaint, it is clear that his misconduct proceedings met the

minimal requirements of *Wolff*, and that there was some evidence to support the findings of the hearings officer.

### A. Notice of the charges

Plaintiff received notice of the original charges on January 2, 2009, and received notice of the amended charges on January 5, 2009. (Compl. ¶¶ 42, 43, 46.) The first disciplinary hearing was held on January 7, 2009, several days after Plaintiff was notified of the misconduct charges, and more than twenty-four hours after Plaintiff received notice of the amended charges. (*See* Compl. ¶ 51.) Therefore, Plaintiff received adequate advance notice of the misconduct charges.

### B. Opportunity to present evidence

Plaintiff claims (1) that he requested Wambold and Winters-Hall as witnesses but they were not present at his hearing, (2) that Szappan improperly withheld video evidence from Plaintiff, and (3) that Szappan did not consider additional evidence that Plaintiff presented at the rehearing.

According to *Wolff*, a prisoner facing a disciplinary proceeding "should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." 418 U.S. at 566. The right to call witnesses or present evidence in a prison disciplinary proceeding is not absolute, however. *Id*. The Supreme Court explained:

> [W]e must balance the inmate's interest[s] against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as

>       to limit access to other inmates to collect statements or to compile
>       other documentary evidence.

*Id.*

### 1. Witness evidence

To the extent Plaintiff claims he had a right to have Wambold and Winters-Hall present as witnesses at the hearing, there is no indication that their presence or testimony would have *aided his defense*. According to the complaint, Wambold and Winters-Hall had already submitted reports of the incident implicating Plaintiff in Cannon's escape attempt. Plaintiff's right to call witnesses does not encompass the right to confront and cross-examine *adverse* witnesses. *See Wolff*, 418 U.S. at 568 ("[T]he Constitution should not be read to impose the [cross-examination] procedure at the present time and . . . adequate bases for decision in prison disciplinary cases can be arrived at without cross-examination."); *see also Sweeney v. Norris*, No. 82-6217, 1988 WL 3478, at *3 (6th Cir. Jan. 19, 1988) ("Inmates do not have a general right to confront and cross-examine adverse witnesses at prison disciplinary hearings.") (unpublished) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 322 n.5 (1976)). To the extent there were errors in the reports submitted by Wambold and Winters-Hall, or incomplete answers to Plaintiff's questionnaire, Plaintiff had an opportunity to raise those issues before the hearings officer.

### 2. Video evidence

Plaintiff asserts that Szappan improperly withheld "exculpatory" video evidence from him and from the state court. Plaintiff alleges that he was not given access to the video evidence and he also refers to a document filed by the MDOC in the state court, which states that the hearings officer withheld the video from the agency record on the ground that its release would jeopardize

the security and safety of the facility by revealing details about the facility's video monitoring capabilities. (Compl. ¶ 69; s*ee* Ex. 1, Certification of Agency Record, Page ID#31.)[3]

Withholding the video from Plaintiff did not infringe his due process rights. Under Michigan law, a hearings officer can restrict a prisoner's access to evidence if the officer determines that access may be "dangerous to a witness or disruptive of normal prison operations." MICH. COMP. LAWS § 791.252(h). The security concerns asserted by the MDOC fall within the scope of § 791.252(h), and are consistent with the limitations on prisoner access-to-evidence permitted by *Wolff. See* 418 U.S. at 566.

*Wolff* does recognize the prisoner's right to present evidence in aid of defense to misconduct charges, but Plaintiff acknowledges that the video was available to, and reviewed by, Szappan at the rehearing. (*See* Compl. ¶¶ 80-85.) Consequently, Plaintiff's due-process right to present the video as evidence in his defense was satisfied.

### 3. Additional evidence

Plaintiff also claims that Szappan did not consider additional evidence presented at the rehearing, including a testimony letter and his itinerary from the day of the incident. Plaintiff does not indicate how his written statement and itinerary would have aided his defense, however. Plaintiff's written testimony does not add to testimony that he could have presented orally at either of the misconduct hearings. Moreover, the itinerary is consistent with the finding of guilt.[4] Thus,

---

[3]The MDOC records custodian also noted that the video would be provided to the court "upon request." (Compl. ¶ 69.)

[4]Plaintiff asserts that the itinerary shows that Plaintiff had a "call-out" for the gym at 7:46 pm on the evening of the dining room incident. This itinerary is consistent with the finding that Plaintiff assisted Cannon by propping up a table before Cannon re-entered the dining room. Plaintiff alleges that Cannon re-entered the dining room at 7:26 pm and that Plaintiff left for his gym call-out shortly thereafter. (Compl. ¶¶ 14-15.)

any error in failing to consider Plaintiff's additional evidence at the rehearing was harmless.  In short, Plaintiff's allegations indicate that he was given sufficient opportunity to present evidence and to call witnesses in aid of his defense.

### C. Written statement of decision

The third element of due process for disciplinary proceedings is satisfied because Plaintiff received a written statement of the evidence relied upon at the hearing that detailed the evidence relied on by the hearings officer and the findings and reasoning of the hearings officer.  (Compl. ¶¶ 80-89;  Ex. 4, Major Misconduct Hr'g Rep., Page ID#66.)

### D. Impartial decision-maker

Petitioner asserts that Defendant Szappan was not an impartial decision-maker because he presided over both the original hearing and the re-hearing.  The Supreme Court's standard for due-process claims based on judicial impartiality is found in *Liteky v. United States*, 510 U.S. 540 (1994); *Brandt v. Curtis*, 138 F. App'x 734, 741 (6th Cir. 2005).  In *Liteky*, the Court set forth an exacting standard:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion *unless* they display a *deep-seated favoritism or antagonism that would make fair judgment impossible*. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky*, 510 U.S. at 555 (emphasis added).  In other words, Szappan's role in conducting the rehearing on remand was not, in itself, a violation of due process.  Plaintiff does not allege any facts

suggesting bias of the sort in described in *Liteky*, i.e., "a deep-seated favoritism or antagonism that would make fair judgment impossible." *See id.* Accordingly, Plaintiff fails to state a due process claim based on the partiality of the hearings officer.

### E. Sufficient evidence

Considering the video evidence and the corroborating officer testimony considered by Szappan, it is clear that "some evidence" supported the decision of the hearings officer. *See Walpole v. Hill*, 472 U.S. 445, 457 (1985). Plaintiff alleges that Szappan's depiction of the events was "inaccurate, embellished, distorted, and [misleading]." (Compl. ¶ 81.) According to Plaintiff, Szappan acknowledged off the record that Plaintiff was not observed on the video recording assisting Cannon exit the dining room at 19:07 hours, but Szappan did not disclose this fact on the record. Furthermore, Plaintiff asserts that Szappan did not disclose that the area where Plaintiff picked up the table is on the opposite side of the dining room as the area where Cannon reentered through the unsecured window.

Plaintiff's disagreement with Szappan's characterization and evaluation of the evidence does not state a due process claim. The Due Process Clause of the Fourteenth Amendment guarantees minimum *process* before depriving an individual of life, liberty, or property; it does not guarantee that the procedure will produce the correct decision. *See Martinez v. California*, 444 U.S. 277, 284 n.9 (1980) ("It must be remembered that even if a state decision . . . is erroneous, it does not necessarily follow that the decision violated that individual's right to due process.").

For the foregoing reasons, therefore, Plaintiff fails to state a due-process claim against Defendant Szappan. The allegations in the complaint indicate that Plaintiff received all the process to which he was constitutionally entitled with respect to the misconduct conviction.[5]

II. Venue

Under the revised venue statute, venue in federal-question cases lies in the district in which any defendant resides or in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b). A substantial part of the events giving rise to Plaintiff's action occurred at TCF which is located in the geographical boundaries of the Eastern District of Michigan. 28 U.S.C. § 102(a). With exception of Defendants Szappan and Conachan, the conduct of Defendants occurred at TCF. Moreover, the misconduct hearings conducted by Szappan were held in the Eastern District. The facilities where the hearings were conducted, the Standish Maximum Correctional Facility and SCF, are (or were) both located in the Eastern District.[6] Thus, the allegations against Defendants arose in the Eastern District of Michigan, where Defendants allegedly committed the acts giving rise to this case. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 185-87 (1979).

---

[5]Defendant Szappan is also immune from monetary damages. The Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled to absolute judicial immunity in relation to actions within the officer's authority. *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); MICH. COMP. LAWS §§ 791.251–255. *See also Williams v. McGinnis*, Nos. 02–1336, 02–1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity).

[6]The Standish facility, which has since closed, was located in Arenac County. SCF is located in Saginaw County. Arenac and Saginaw Counties are within the geographical boundaries of the Eastern District of Michigan. 28 U.S.C. § 102(a).

Furthermore, all of the defendants (other than Szappan) are public officials serving in Lapeer County,[7] and they currently "reside" in that county for purposes of venue over a suit challenging official acts. *See Butterworth v. Hill*, 114 U.S. 128, 132 (1885); *O'Neill v. Battisti*, 472 F.2d 789, 791 (6th Cir. 1972). Lapeer County is within the geographical boundaries of the Eastern District of Michigan. 28 U.S.C. § 102(a).

The only defendant who currently "resides" in the Western District is Defendant Szappan.[8] Thus, venue is proper in this district under 28 U.S.C. § 1391; nevertheless, the Court has authority to transfer this case to another district in which the case "might have been brought," "[f]or the convenience of parties and witness, in the interest of justice[.]" 28 U.S.C. § 1404(a). Because a substantial part of the events giving rise to Plaintiff's claims occurred in the Eastern District, and because Plaintiff[9] and all of the remaining Defendants currently reside in the Eastern District, in the interest of justice and the convenience of the remaining parties, the Court will transfer this case to the Eastern District of Michigan after dismissing the claims against Defendant Szappan. *See* 28 U.S.C. § 1404(a); *see also Carver v. Knox County, Tenn.*, 887 F.2d 1287, 1291 (6th Cir. 1989) (noting that § 1404(a) permits a court to transfer a case *sua sponte*).

---

[7]Defendants Winters-Hall, Wambold, Bernstein, and Carter work at TCF, which is located in Lapeer, Michigan. According to the complaint, Defendant Conachan works in Caro, Michigan. Both Lapeer and Caro are located in Lapeer County.

[8]According to the complaint, Szappan works for the State Office of Administrative Hearings and Rules in Lansing, Michigan. Lansing is located in Ingham County, in the Western District of Michigan. 28 U.S.C. § 102(b).

[9]Plaintiff is incarcerated at SCF, which is located in Saginaw County, in the Eastern District of Michigan. *See* 28 U.S.C. § 102(a).

**Conclusion**

For the foregoing reasons, Plaintiff's claims against Defendant Szappan will be dismissed for failure to state a claim and this action will be transferred to the Eastern District of Michigan for further proceedings. It is noted that this Court has not reviewed Plaintiff's claims against the remaining Defendants under 28 U.S.C. §§ 1915(e)(2), 1915A, or under 42 U.S.C. § 1997e(c).

An order will be entered that is consistent with this opinion.


Dated:  July 12, 2011                    /s/ Janet T. Neff
                                         Janet T. Neff
                                         United States District Judge