UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERICK V. BROWN,

        Plaintiff,

v.                                      CASE NO. 11-13010
                                        HON. LAWRENCE P. ZATKOFF

PEGGY WINTERS-HALL,
CONSTANCE WAMBOLD,
JOHN BERNSTEIN, ORA CARTER,
and CHRISTOPHER CONACHAN,

        Defendants.
_____/

**ORDER**
**DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION**
**AND SUMMARILY DISMISSING THE COMPLAINT**

**I. Introduction**

This matter is pending before the Court on plaintiff Erick V. Brown's civil rights complaint and motion for reconsideration. Plaintiff is a state prisoner at Saginaw Correctional Facility in Freeland, Michigan. He filed his complaint in the Western District of Michigan, which dismissed one defendant (hearing officer Michael Szappan) and then transferred the case to this District. The remaining defendants are parole officer Christopher Conachan and the following employees of the Michigan Department of Corrections at Thumb Correctional Facility in Lapeer, Michigan: correctional officers Peggy Winters-Hall and John Bernstein; food service supervisor Constance Wambold; and assistant deputy warden Ora Carter.

**A. The Facts and State Court Proceedings**

The complaint arises from an incident that occurred at Thumb Correctional Facility on

December 24, 2008. Plaintiff was working in the dining room when he noticed that prisoner Cannon was missing. He notified defendants Constance Wambold and Peggy Winters-Hall of Cannon's absence and subsequently observed Cannon enter the dining room through a window. Prison officials suspected an escape attempt after they found bed sheets tied together on the exterior of the building.

Defendant Winters-Hall reviewed a videotaped recording of the dining room and stated in an incident report that Cannon appeared to exit an unsecured window and that Plaintiff assisted Cannon. Defendant Wambold stated in a separate incident report that she noticed Cannon was missing and asked Plaintiff about Cannon's absence. Defendant John Bernstein also reviewed the video recording. He observed Cannon exiting the dining area through a broken window and Plaintiff positioning the tables in the dining room to block Winters-Hall's view. Cannon then re-entered the window and returned to his duties.

Defendant Bernstein charged Plaintiff with major misconduct for being an accomplice to Cannon's escape. Although the charge was later changed to escape, hearing officer Michael Szappan held a misconduct hearing on January 7, 2009, and found Plaintiff guilty of accomplice to escape. Plaintiff was punished with thirty days of punitive detention, forfeiture of disciplinary credits, confinement at a level V facility for five years, and indefinite suspension of visiting privileges.

Plaintiff appealed the hearing officer's decision to the Ingham County Circuit Court, which remanded the case to hearing officer Szappan because it did not appear to the court that Szappan had personally reviewed the videotaped recording. Szappan then reviewed the video recording, conducted another hearing, and upheld his original finding of misconduct. The Ingham County

Circuit Court upheld Szappan's findings, and the Michigan Court of Appeals denied leave to appeal for lack of merit in the grounds presented. *See Brown v. Dep't of Corr.*, No. 297413 (Mich. Ct. App. Aug. 17, 2010). On March 8, 2011, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See Brown v. Dep't of Corr.*, 794 N.W.2d 607 (Mich. 2011).

### B.  The Complaint

Plaintiff filed his federal civil rights complaint on May 18, 2011.  On July 13, 2011, United States District Judge Janet T. Neff dismissed Plaintiff's claims against hearing officer Michael Szappan and transferred the case to this District.  Plaintiff makes the following allegations about the remaining defendants:

- Winters-Hall and Constance Wambold failed to report the escape attempt and conspired with each other to omit from their incident reports the fact that it was Plaintiff who alerted them to the fact that Cannon was missing;

- Defendant Winters-Hall fabricated inculpatory evidence by stating that, at 1907 hours on the videotape, she identified Plaintiff assisting Cannon;

- Defendant Bernstein conspired with defendant Winters-Hall and knew at the time he wrote the misconduct report that Plaintiff had been misidentified as the person assisting prisoner Cannon;

- Defendant Bernstein failed to list prisoner Mauldin as a relevant witness on the misconduct report;

- Defendant Conchan failed to review the videotaped evidence of the incident report prior to the disciplinary hearing to determine whether it contained exculpatory evidence or whether there were security reasons for not disclosing the content of the videotape to Plaintiff;

- Defendant Conchan failed to interview or obtain prisoner Mauldin's statement;

- Defendant Conchan failed to make a diligent effort to obtain defendant Winters-Hall's answers to relevant and material questions; and

- Defendant Carter failed to provide Plaintiff with a pre-deprivation hearing

before transferring him to punitive segregation at a maximum security prison.

Plaintiff seeks a reversal of the hearing officer's findings; expungement of the misconduct record; restoration of 971 days of forfeited disciplinary credits; a transfer back to Thumb Correctional Facility; reinstatement to his former work assignment; and money damages. He has also filed a motion for reconsideration of Judge Neff's decision.

## II. Standard of Review

The Western District of Michigan granted Plaintiff's application for permission to proceed without prepayment of the fees and costs for this action. An indigent prisoner's civil rights complaint may be dismissed if the complaint (1) is frivolous or malicious or fails to state a claim for which relief may be granted or (2) seeks monetary relief from a defendant who is immune from such relief. *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001) (citing 28 U.S.C. §§ 1915(e)(2) and 1915A). A complaint is frivolous if it lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

"To state a claim under § 1983, a plaintiff must set forth facts that, when construed favorably, establish: 1) the deprivation of a right secured by the Constitution or laws of the United States; 2) caused by a person acting under the color of state law." *Harris v. Circleville*, 583 F.3d 356, 364 (6th Cir. 2009) (citing *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009)). While a complaint need not contain "detailed factual allegations," a plaintiff's obligation to provide grounds entitling him to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations omitted). Conclusory statements will not suffice, and only a complaint that states a plausible claim for relief will survive. *Ashcroft v. Iqbal*, __ U.S. __, __, 129 S. Ct. 1937, 1949-50

(2009) (citing *Twombly*, 550 U.S. at 555-56). "So, to survive scrutiny under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Hill v. Lappin*, 630 F.3d. 468, 471 (6th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1949).

### III. Discussion

#### A. Conspiracy

The Court construes Plaintiff's allegations of conspiracy as being brought under 42 U.S.C. § 1985(3), which prohibits conspiracies to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Plaintiff has not shown that the defendants' actions were motivated by some racial or class-based, invidiously discriminatory animus. He has not demonstrated "both membership in a protected class and discrimination on account of it." *Estate of Smithers ex rel. Norris v. Flint*, 602 F.3d 758, 765 (6th Cir. 2010). Consequently, Plaintiff's conspiracy claims lack an arguable basis in law.

#### B. Fabrication of Evidence

Plaintiff contends that defendant Winters-Hall fabricated inculpatory evidence by stating that she identified Plaintiff assisting prisoner Cannon. Plaintiff also contends that defendant Bernstein knew at the time he wrote the misconduct report that Plaintiff was misidentified in the videotape.

Hearing officer Michael Szappan, however, stated in his hearing report that he and Plaintiff reviewed the videotape together at the re-hearing. According to Szappan, the videotape shows

Plaintiff going to the window area, picking up a table, and leaving a mop behind. The tape then shows prisoner Cannon come into the chow hall and start mopping the floor.

In light of the videotape, it does not appear that either Winters-Hall or Bernstein were mistaken when they reported that Plaintiff assisted prisoner Cannon by propping up tables to block the correctional officers' view. Furthermore, due process requires only that "some evidence" support the decision in a prison disciplinary matter. *Superintendent, Mass Corr. Inst. at Walpole v. Hill*, 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455-56.

The videotaped recording in this case was some evidence that Plaintiff assisted Cannon in trying to escape. Plaintiff therefore has no right to relief on the basis of his claim that Winters-Hall fabricated inculpatory evidence and that defendant Bernstein conspired with Winters-Hall to say that Plaintiff was identified in the videotape as assisting Cannon.

### C. Failure to Report the Escape

Plaintiff alleges that Winters-Hall and Wambold failed to report the escape attempt and thereby jeopardized the safety of the facility. The Eighth Amendment to the United States Constitution requires prison officials to "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). But to state a cognizable claim under the Eighth Amendment, a plaintiff must show that the deprivation was sufficiently serious and that the official was deliberately indifferent to the inmate's health or safety. *Id*. at 834. A prison official is not liable under the Eighth Amendment

unless the official "knows of and disregards an excessive risk to inmate health or safety." *Id*. at 837.

The escape attempt in this case ultimately was reported, and no one was harmed as a result of any delay in reporting the attempted escape. Plaintiff has failed to show that the alleged failure to report the incident resulted in a sufficiently serious deprivation of rights and that the defendants disregarded an excessive risk. Consequently, he is not entitled to relief on the basis of the alleged failure to report the escape attempt.

### D. Failure to List a Witness

Plaintiff states that defendant Conchan failed to interview prisoner Mauldin and that defendant Bernstein failed to list prisoner Mauldin as a witness on the misconduct report. This claim lacks merit because "[p]risoners do not have an absolute, unfettered right to present evidence at misconduct hearings." *Falkiewicz v. Grayson*, 271 F. Supp.2d 942, 950 (E.D. Mich. 2003). Mauldin, moreover, did not have any favorable evidence to offer Plaintiff. He apparently informed Winters-Hall that, on the day in question, he notified Plaintiff that someone stole his mop bucket. Plaintiff allegedly responded to this information by walking over to a mop bucket by the window in question and then walking away without the mop bucket. A few minutes later, Plaintiff stood a table on end and put the table in the middle of the room. In doing so, he apparently blocked the view even more than it already was blocked. *See* Erick Brown's written testimony submitted at rehearing, page 3.

Mauldin's comments to Winters-Hall were inculpatory and would not have helped Plaintiff. Moreover, Plaintiff had no right to confront or cross-examine adverse witnesses. *Baxter v. Palmigiano*, 425 U.S. 308, 322 n.5 (1976); *see also Wolff v. McDonnell*, 418 U.S. 539, 568 (1974) (explaining that "adequate bases for decision in prison disciplinary cases can be arrived at without

cross-examination"). Therefore, the failure to interview Mauldin and to list him as a witness at the misconduct hearing did not violate Plaintiff's constitutional rights.

### E. Failure to Obtain Winters-Hall's Answer

Plaintiff asserts that defendant Conchan failed to make a diligent effort to obtain Winters-Hall's answers to his questions. The questions were whether: (1) Plaintiff had informed Winters-Hall and Wambold that prisoner Cannon was missing; (2) Wambold looked for Cannon and could not find him; (3) Winters-Hall checked to make sure she had Cannon's identification; (4) Plaintiff seemed upset that he had to do Cannon's job in his absence; (5) it was Plaintiff's responsibility as lead worker to make sure all the dining room jobs were completed before he left at night; (6) Winters-Hall was talking to Plaintiff about some neck exercises during the first part of the clean-up; (7) Winters-Hall thought Plaintiff attempted to help Cannon escape; and (8) Plaintiff had ever been cited for misconduct in the three years that he worked in the kitchen.

Exhibits to the complaint indicate that these questions were sent to Winters-Hall. Had Winters-Hall answered the questions, she could have incriminated Plaintiff, rather than helped him. Even if her answers to Plaintiff's questions would have been benefitted him, it appears that the hearing officer's findings were based on the videotaped recording of the incident. Therefore, Plaintiff was not prejudiced by the lack of answers from Winters-Hall to Plaintiff's questions.

### F. Conchan's Failure to Review the Videotape

Plaintiff alleges that defendant Conchan failed to review the videotaped evidence of the incident report prior to the disciplinary hearing to determine whether it contained exculpatory evidence or whether there were security reasons for not disclosing its content. Even if this were true, Plaintiff and hearing officer Szappan ultimately reviewed the videotape at the re-hearing and,

according to Szappan, Plaintiff had nothing further to say when asked about the videotaped footage. Plaintiff has failed to show how he was prejudiced by Conchan's alleged failure to review the videotaped recording before Plaintiff's hearing.

### G. Lack of a Pre-Deprivation Hearing

Plaintiff claims that defendant Carter failed to provide him with a pre-deprivation hearing before his transfer to punitive segregation at a maximum security prison. This claim lacks merit because the Supreme Court

> held in *Meachum v. Fano* [427 U.S. 215 (1976)], that no Due Process Clause liberty interest of a duly convicted prison inmate is infringed when he is transferred from one prison to another within the State, whether with or without a hearing, absent some right or justifiable expectation rooted in state law that he will not be transferred except for misbehavior or upon the occurrence of other specified events. . . . As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight. The Clause does not require hearings in connection with transfers whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive.

*Montanye v. Haymes*, 427 U.S. 236, 242 (1976).

Plaintiff has not pointed to any state law rule or regulation that requires a hearing before a transfer to another prison, and the degree of confinement is within the sentence imposed.[1] Therefore, his rights under the Due Process Clause were not violated by the failure to provide him with a hearing before the institutional transfer.

### IV. Conclusion

The Court concludes for the reasons given above that Plaintiff's claims are frivolous and fail

---

[1] Records maintained by the Michigan Department of Corrections on its official website indicate that Plaintiff is serving several lengthy sentences. *See* http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=240599.

to state a claim for which relief may be granted. Accordingly, the complaint is summarily dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). Plaintiff may not proceed *in forma pauperis* on appeal because an appeal would be frivolous and could not be taken in good faith. 28 U.S.C. § 1915(a)(3); *Coppedge v. United States*, 369 U.S. 438, 445 (1962); *McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997).

## V. The Motion for Reconsideration

The only remaining issue is whether Plaintiff is entitled to reconsideration of Judge Neff's order dismissing hearing officer Szappan. Judges have discretion to reconsider pre-transfer orders, but "'pre-transfer rulings constitute the law of the case and should not be lightly disturbed.'" *Gillig v. Advanced Cardiovascular Systems, Inc*., 67 F.3d 586, 590 (6th Cir. 1995) (quoting 1b JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE, ¶ 0.404[4.-2] (2d ed. 1994)). In this case, Judge Neff determined in a reasoned opinion that hearing officer Szappan was immune from money damages and that Plaintiff received all the process to which he was entitled. Plaintiff has not demonstrated that Judge Neff was misled by "a palpable defect" and "that correcting the defect will result in a different disposition of the case." Local Rule 7.1(h)(3) (E.D. Mich. Mar. 1, 2010). Accordingly, Plaintiff's motion for reconsideration [dkt. #6] is **DENIED**.

          s/Lawrence P. Zatkoff
          LAWRENCE P. ZATKOFF
          UNITED STATES DISTRICT JUDGE

Dated: September 21, 2011

CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 21, 2011.

                                       s/Marie E. Verlinde
                                       Case Manager
                                       (810) 984-3290